FILED

LOCKHART TEAL, LLC
Erin N. Lockhart, Esq., (FBN 10559)
333 E. New York Ave., Suite A
DeLand, FL 32724
Phone: (386) 738-3400
Fax: (386) 738-4300
Email: lockhart@keltonandteal.com

Attorney for Plaintiff, JOE L PRINCE, II

2016 AUG -9  PM 4: 03

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DISTRICT

## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| JOE L. PRINCE, II, Individually, | CASE NO.: |
| Plaintiff, | 3:16 CV 1016 - J-39PDB |
| v. | |
| UNIVERSITY OF ST. AUGUSTINE FOR HEALTH SCIENCES, a Florida Limited Liability Company; MARGARET WICINSKI;  WANDA NITSCH; DEBRA GRAY; and DEAN REYNOLDS; | **COMPLAINT FOR DAMAGES FOR BREACH OF CONTRACT AND FOR VIOLATION OF CIVIL RIGHTS (42 U.S.C. §1981)** |
| Defendants. | **JURY TRIAL DEMANDED.** |

JOE L. PRINCE, II v. UNIVERSITY OF ST. AUGSTINE FOR HEALTH SCIENCES, et al
US District Court for the Middle District of Florida, Case No.:
Page 1 of 36

## INTRODUCTION

1.  This action arises from the failure of the UNIVERSITY OF ST. AUGUSTINE FOR

    HEALTH SCIENCES, LLC, (hereinafter referred to as "UNIVERSITY") and its

    faculty (Defendant, MARGARET WICINSKI), administration (Defendants DEBRA

    GRAY and WANDA NITSCH) and employee (Defendant DEAN REYNOLDS) to

    comply with and/or enforce the requirements of the 2015-2016 Student Handbook

    and (Defendants UNIVERSITY, WICINSKI, GRAY and NITSCH) for unlawfully

    denying – because of his race – the rights of JOE L PRINCE, II, a 27 year-old black

    male doctor of physical therapy student.  The acts and omissions complained of

    herein began during the Summer 2015 trimester, continued into the Spring 2016

    trimester, and are ongoing as of the filing of this complaint.  PRINCE sues each and

    all Defendants for breach of implied-in-fact contract and for violation of his civil

    rights pursuant to 42 U.S.C. §1981.

## JURISDICTION AND VENUE

2.  Plaintiff sues UNIVERSITY for breach of implied-in-fact contract.  This court has

    personal jurisdiction over UNIVERSITY pursuant to Rule 17, Fed. R.C.P. and

    §48.193, Florida Statutes, because Defendant is a registered Florida Limited Liability

    Company doing business in the State of Florida.

3.  Plaintiff sues Defendants WICINSKI, GRAY, NITSCH and REYNOLDS for breach

    of implied-in-fact contract.  This court has personal jurisdiction over each and all of

    these defendants pursuant to Rule 17, Fed. R.C.P. and §48.193, Florida Statutes,

    because they are individuals over the age of 18 that are residents of the State of

JOE L. PRINCE, II v. UNIVERSITY OF ST. AUGSTINE FOR HEALTH SCIENCES, et al
US District Court for the Middle District of Florida, Case No.:
Page 2 of 36

Florida and are engaged in substantial activity within the State, including activity giving rise to the claims in this action.

4. Plaintiff sues for breach of implied-in-fact contract. This court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §1331 (actions with a Federal Question).

5. Plaintiff sues for violation of his civil rights pursuant to 42 U.S.C. §1981. This court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1343 (Civil Rights) and 1331 (Federal Question).

6. The appropriate venue for this action is the United States District Court for the Middle District of Florida located in Jacksonville, Florida pursuant to 28 U.S.C. §1391. Each and all of the acts and omissions giving rise to Plaintiff's claims occurred in St. Augustine, St. Johns County, Florida.

## IDENTIFICATION OF PARTIES

7. Plaintiff is an individual over the age of 18, and a resident of the State of Florida. He is a black male and thereby a member of a "racial minority" for purposes of the instant claim, under 42 U.S.C. §1981.

8. Plaintiff was at all material times a student at UNIVERSITY enrolled in in the Flexible Doctor of Physical Therapy Program (hereinafter referred to as "Flex DPT Program") with an expected graduation date of August 2017. Plaintiff attends courses online and on campus at the St. Augustine, Florida Campus.

9. Defendant, UNIVERSITY, is a Florida Foreign Limited Liability Company whose principal place of business is San Marcos, California with campuses located in St. Augustine, Florida; Miami, Florida; Austin, Texas; and San Marcos, California.

JOE L. PRINCE, II v. UNIVERSITY OF ST. AUGSTINE FOR HEALTH SCIENCES, et al
US District Court for the Middle District of Florida, Case No.:
Page 3 of 36

10. Defendant, UNIVERSITY, is subject to the requirements of 42 U.S.C. §1981 because it is a private entity engaging in business as a private, for-profit university that has the right to make and enforce contracts, to sue and be sued, to be a party to litigation as well as to be held accountable for the infringement upon the rights of others to do the same.

11. At all relevant times, Defendant, UNIVERSITY, employed Defendant, WICINSKI, a white female, as an Assistant Professor in the Flex DPT Program.  During the Summer 2015 trimester, WICINSKI taught Plaintiff's PHT5236C001: Therapeutic Exercise II course and during the Fall 2015 trimester, WICINSKI taught Plaintiff's "PHT5133C Musculoskeletal II: Mock Clinic" ("Mock Clinic") course.  She was also Plaintiff's assigned Academic Advisor.  WICINSKI served as Chair of the Academic Advisory Committee (a/k/a "Dismissal Committee") during the Spring 2016 trimester, while Plaintiff's dismissal appeal was pending.  She is a graduate of the Doctor of Physical Therapy Program at UNIVERSITY and was taught by co-Defendant, NITSCH, when she was a student at UNIVERSITY enrolled in Mock Clinic.  WICINSKI is married to co-Defendant, REYNOLDS.  WICINSKI committed the acts complained of herein while acting within the scope and course of her official duties as an Assistant Professor, Academic Advisor to Plaintiff and Chair of the Dismissal Committee.  She is sued in her individual capacity.

12. At all relevant times, Defendant, UNIVERSITY, employed Defendant, GRAY, a white female, as Flex DPT Program Director and Associate Professor at UNIVERSITY.  GRAY committed each of the acts complained of herein while acting

JOE L. PRINCE, II v. UNIVERSITY OF ST. AUGSTINE FOR HEALTH SCIENCES, et al
US District Court for the Middle District of Florida, Case No.:
Page 4 of 36

within the scope and course of her official duties as Flex DPT Program Director and Associate Professor. She is sued in her individual capacity.

13. At all relevant times, Defendant UNIVERSITY, employed Defendant, NITSCH, a white female, as the President/CEO and Chief Academic Officer of UNIVERSITY. NITSCH is a former faculty member of UNIVERSITY and she taught co-Defendant WICINSKI in Mock Clinic when WICINSKI was a Doctor of Physical Therapy student at UNIVERSITY. NITSCH committed the acts complained of herein while acting within the scope and course of her official duties as President/CEO and Chief Academic Officer. She is sued in her individual capacity.

14. At all relevant times, Defendant UNIVERSITY, employed Defendant, REYNOLDS, a white male, as the Director of Information Technology at UNIVERSITY. REYNOLDS committed the acts complained of herein while acting within the scope and course of his official duties as Director of Information Technology and/or while he still had access to UNIVERSITY's servers. REYNOLDS is married to co-Defendant WICINSKI. He is sued in his individual capacity.

15. Plaintiff demands a jury trial.

## IMPLIED-IN-FACT CONTRACT: STUDENT HANDBOOK and CATALOG

16. The student-university relationship is contractual in nature and the terms of the contract may be derived from a student handbook, catalog, or other statement of university policy. *See*, Sharick v. Se. Univ. of the Health Sciences, Inc., 780 So.2d 136, 138 (Fla. 3d DCA 2000) and Univ. of Miss. Med. Ctr. V. Hughes, 765 So2d 528, 535 (Miss. 2000).

JOE L. PRINCE, II v. UNIVERSITY OF ST. AUGSTINE FOR HEALTH SCIENCES, et al
US District Court for the Middle District of Florida, Case No.:
Page 5 of 36

17. A private university's legal relationship with a student is solely contractual in character, and there is an implied condition that the student knows and will conform to the rules and regulations of the institution and under this contract implied in fact, the student pays a fee for services and the private university provides an educational experience designed to lead to a degree.  *See*, *JALLALI v. Nova Southeastern University, Inc.*, 992 So.2d 338 (Fla. 4th DCA 2008).

18. The University of St. Augustine for Health Sciences 2015-2016 Student Handbook (rev. 04/05/2016), hereinafter referred to as "Student Handbook," and the University of St. Augustine for Health Sciences Catalog: September 1, 2015 – August 31, 2016, hereinafter referred to as "Catalog," [1] along with the Fall 2015 PHT5133C001 Musculoskeletal II: Mock Clinic Course Syllabus, [2] hereinafter referred to as "Course Syllabus" provide the terms and conditions of UNIVERSITY's implied-in-fact contract with Plaintiff.

19. According to the Catalog, UNIVERSITY employs a Non-Discrimination Policy, whereby students are said to be free from discrimination on the basis of race, color, religion, sex, age, disability, national or ethnic origin or marital status in administration of [UNIVERSITY's] educational policies, scholarship and loan programs or any other school administered programs. Catalog at inside cover.

20. According to the Student Handbook, students are entitled to certain rights as students, including the right of Due Process. Student Handbook at 68.

---

[1] Composite Exhibit A: 2015 -2016 University of St. Augustine for Health Sciences Student Handbook (rev. 08/12/2015); University of St. Augustine for Health Sciences Catalog: September 1, 2015 – August 31, 2016.
[2] Exhibit B: Fall 2015 PHT5133C Musculoskeletal II: Mock Clinic Course Syllabus

JOE L. PRINCE, II v. UNIVERSITY OF ST. AUGSTINE FOR HEALTH SCIENCES, et al
US District Court for the Middle District of Florida, Case No.:
Page 6 of 36

## STATEMENT OF FACTS

21. During the Summer 2015 Semester, Plaintiff enrolled in "PHT5236C001: Therapeutic Exercise II:" at UNIVERSITY, taught by WICINSKI.

22. Plaintiff was the only black male student in the class.

23. WICINSKI's interaction with Plaintiff and the other black student in the class, a female, was notably different than her interaction with the white students.  During group class work, WICINSKI would make rounds throughout the room, stopping and speaking with each student group and would consistently not get to, or would spend considerably less time with, Plaintiff and the other black student.

24. Beginning May 9, 2015 and throughout the Summer 2015 trimester, WICINSKI would repeatedly tell Plaintiff, when he had difficulty demonstrating certain stretches, that "if [he] didn't start taking yoga, [she] would have to fail him."

25. On one occasion, Plaintiff and another student – a white male – were talking and Plaintiff clapped his hands together.  WICINSKI quickly turned around and asked the white student, "Did [Plaintiff] just hit you?"  Plaintiff and the white student were both surprised by the out-of-context and bizarre nature of WICINSKI's inquiry.  After the white student answered saying, "No, he just clapped his hands together," WICINSKI said, "Well, OK.  Because we don't hit students at this school, that is grounds for immediate expulsion and you would have no longer been a student in this program."

26. During the Fall 2015 Semester, Plaintiff enrolled in PHT5133C Musculoskeletal II: Mock Clinic, hereinafter referred to as "Mock Clinic," at UNIVERSITY, taught by WICINSKI.

JOE L. PRINCE, II v. UNIVERSITY OF ST. AUGSTINE FOR HEALTH SCIENCES, et al
US District Court for the Middle District of Florida, Case No.:
Page 7 of 36

27. Mock Clinic is a course intended to simulate a clinical setting in which students practice techniques used in the "real world" to identify and treat various physical injuries and impairments and, based on the physical evaluation, devise a treatment plan to address the "patient's" therapeutic needs.

28. The final exam for this course is comprised of two parts. First, a physical evaluation of a hypothetical patient and second, written documentation of a Plan of Care. A student must pass both segments in order to pass the class and if (s)he fails either segment, (s)he will receive an "F" for the course. Course Syllabus, at 6.

29. Pursuant to the Student Handbook, "a student will be dismissed from the program if an "F" is received in any course." Student Handbook, at 82.

30. At the midterm, Plaintiff passed the written portion with a score of 81%.

31. Plaintiff scored 100% on each Plan of Care assignment that was submitted during the course.[3]

32. On the final exam, Plaintiff passed the physical evaluation portion, but failed the written portion and was required to re-take (read: re-write) that portion of the final exam.

33. When a student is required to re-take a practical examination due to unsatisfactory performance (a score of less than 80%) on the examination, the Student Handbook and Catalog require the student and faculty instructor to jointly prepare a remediation plan that is reviewed and approved by the Academic Progression and Retention Committee ("APRC"). Student Handbook, at 51.

---

[3] See, Exhibit C: Plaintiff's "Gradebook" printout.

JOE L. PRINCE, II v. UNIVERSITY OF ST. AUGSTINE FOR HEALTH SCIENCES, et al
US District Court for the Middle District of Florida, Case No.:
Page 8 of 36

34. Once approved by the APRC, the remediation plan is a contract that both the student and the faculty instructor are required to adhere to. Id. at 52.

35. Plaintiff's submitted his proposed remediation plan to WICINSKI on December 3, 2015.[4]

36. WICINSKI approved Plaintiff's proposed remediation plan as written, and made no revisions or additions – but waited until December 5, 2015 (testing day) to grant her approval.

37. On December 5, 2015, Plaintiff sat for the first re-take of the Final written documentation and received another failing grade (67.9%).

38. Plaintiff believes that WICINSKI's subjective/skewed grading played a role in his failing grade.

39. Pursuant to the Student Handbook, to be considered for a second re-take, Plaintiff was required to prepare a revised remediation plan for review and approval by WICINSKI and submit it, along with his original remediation plan and a letter addressed to the Academic Progress and Retention Committee ("APRC"). Id., at 51.

40. On December 9, 2015, Plaintiff emailed his proposed revised remediation plan[5] to WICINSKI for her review and signature, which she approved on December 12, 2015, after adding language indicating that she would provide Plaintiff the feedback he had repeatedly requested prior to the next re-take.

---

[4] Exhibit D: Plaintiff's first remediation plan dated 12/03/2015
[5] Exhibit E: Plaintiff's revised remediation plan dated 12/09/2015

JOE L. PRINCE, II v. UNIVERSITY OF ST. AUGSTINE FOR HEALTH SCIENCES, et al
US District Court for the Middle District of Florida, Case No.:
Page 9 of 36

41. Plaintiff proposed meeting WICINSKI on Friday, December 11, 2015, "anytime after 2PM on Friday," and offered to move another exam, if necessary, in order to accommodate WICINSKI's schedule.[6]

42. WICINSKI waited until the following day to reply, wherein she stated that she was unavailable to meet at all during the afternoon on Friday *and proposed no alternate time to meet*.[7]

43. Consequently no one-on-one meeting time with Plaintiff was scheduled.

44. Meanwhile, a white student who also had to re-take the written portion of the final, requested and was given time for, a one-on-one review with WICINSKI on December 10, 2015.

45. Aware that Plaintiff was seeking and had not been given a meeting time by WICINSKI, that student invited Plaintiff to "sit in" on her phone meeting with WICINSKI on December 10, 2015.

46. Despite knowing that Plaintiff was also on the phone call, WICINSKI spent the majority of the time answering the white student's questions, and Plaintiff was unable to get all of his questions answered.

47. During the December 10, 2015 "crashed" phone meeting, Plaintiff told WICINSKI that he would be sending her, via email, a practice Plan of Care for her review and feedback, and WICINSKI agreed to review it and provide feedback.

48. Similarly, the white student told WICINSKI that she would be completing additional work and sending it to WICINSKI for feedback and WICINSKI agreed to review it and provide feedback.

---

[6] Composite EXHIBIT F: December 9, 2015 emails requesting one-to-one review.
[7] Composite EXHIBIT F: December 9, 2015 emails requesting one-to-one review.

JOE L. PRINCE, II v. UNIVERSITY OF ST. AUGSTINE FOR HEALTH SCIENCES, et al
US District Court for the Middle District of Florida, Case No.:
Page 10 of 36

49. On December 12, 2015, the white student submitted work to WICINSKI for her review and feedback and, in return, WICINSKI scheduled a one-on-one meeting with that student for December 14, 2015 during which she provided feedback to that student.

50. On December 13, 2015 at 10:18 PM, Plaintiff sent WICINSKI a practice Plan of Care attached in an email,[8] hereinafter referred to as "POC email," and requested that she review it and provide feedback, <u>paying particular attention to the section highlighted in bold font because that was an area where Plaintiff felt most uncertain about his understanding of the material</u>.

51. It is undisputed that Plaintiff's December 13, 2015 POC email was successfully sent from his UNIVERSITY email account and received by WICINSKI's UNIVERSITY email account.[9]

52. WICINSKI never acknowledged having received, nor responded to, Plaintiff's December 13, 2015 POC email, and she never provided any response or feedback concerning the specific area of difficulty that Plaintiff asked for help with.

53. On December 14, 2015 at 2:54 PM, Plaintiff sent WICINSKI, via email,[10] for her review and approval, a copy of his "APRC letter" which advises the Committee, "…I have completed an additional [Plan of Care], which was submitted for the instructor's review…," referring to the practice Plan of Care attached to his December 13, 2015 "POC email."

---

[8] *See*, EXHIBIT G: December 13, 2015 POC email
[9] *See*, EXHIBIT H: January 25, 2016 email to NITSCH from Edward K. Hill (Edward.hill@laureate.net)
[10] See, EXHIBIT I: December 14, 2015 APRC email

JOE L. PRINCE, II v. UNIVERSITY OF ST. AUGSTINE FOR HEALTH SCIENCES, et al
US District Court for the Middle District of Florida, Case No.:
Page 11 of 36

54. On December 15, 2015, WICINSKI initialed and returned the APRC letter to Plaintiff bearing her initials indicating her review and approval of same. [11]

55. Plaintiff submitted the required materials to APRC and was immediately granted permission for a second re-take (3rd attempt).

56. On December 16, 2015, Plaintiff sat for the second re-take.  This time, Plaintiff allocated time to providing overly detailed answers, which cost him valuable minutes, and he was unable to complete the exam within the time period allotted.

57. According to WICINSKI, an incomplete Plan of Care is an "automatic fail."

58. Despite running out of time, Plaintiff scored 74%.

59. Following the December 16, 2015 re-take, WICINSKI lied to Plaintiff and the other students when she said that she would send their grades out once all of the exams had been graded so that everyone would receive their grade at the same time.

60. Instead, WICINSKI notified the white student of her grade at 2:08 PM[12] but waited two more hours to notify Plaintiff of his grade at 4:13 PM.[13]

61. Plaintiff immediately called WICINSKI's office in hopes of reaching her to request a face-to-face meeting to discuss his grade and performance on the exam, and when he did reach her, a meeting was set for December 18, 2016 at 10:30 AM.

62. In a voicemail message to Plaintiff, WICINSKI repeatedly stated that she hoped that their meeting will give Plaintiff some "closure" about things – implying that she

---

[11] *See*, EXHIBIT J: Plaintiff's remediation plan, revised remediation plan, and APRC letter with WICINSKI's signature
[12] *See*, EXHIBIT K: WICINSKI's 12/17/2015 exam results email to white student, sent at 2:08 PM.
[13] *See*, EXHIBIT L: WICINSKI's 12/172015 exam results email to Plaintiff, sent at 4:13 PM

JOE L. PRINCE, II v. UNIVERSITY OF ST. AUGSTINE FOR HEALTH SCIENCES, et al
US District Court for the Middle District of Florida, Case No.:
Page 12 of 36

intended for their December 18, 2015 meeting to help Plaintiff understand his failing grade and his subsequent dismissal from the Flex DPT Program.

63. WICINSKI's voicemail message makes it clear that she believed that Plaintiff's failing grade in her Mock Clinic course, as well as his dismissal from the Flex DPT Program, was each a *certainty*.

64. In preparation for his meeting with WICINSKI, Plaintiff composed a list of "talking points" that he could refer to during the meeting to assist him in making sure that all of his questions and concerns were addressed.

65. On December 18, 2015, Plaintiff created a draft email, attaching his "talking points" document[14] to that email and saved it to the "drafts" folder of his UNIVERSITY email account for possible use later to confirm what had been discussed during their meeting.

66. During the December 18, 2015 meeting, WICINSKI told Plaintiff, "If you would have finished, you would have passed."

67. Plaintiff confronted WICINSKI with the fact that she never provided feedback to him or responded to his December 13, 2015 "POC email," even though her handwritten notes on his revised remediation plan and her approval of Plaintiff's ARPC letter, clearly indicated that she would.

68. WICINSKI replied that, "[she] said [she] would review it, [she] never said [she] would provide feedback on it."

69. Also during the December 18, 2015 meeting, Plaintiff requested that WICINSKI consider re-grading his December 5, 2015 attempt where an entire section was

---

[14] *See*, EXHIBIT M: Plaintiff's "talking points" Word document.

JOE L. PRINCE, II v. UNIVERSITY OF ST. AUGSTINE FOR HEALTH SCIENCES, et al
US District Court for the Middle District of Florida, Case No.:
Page 13 of 36

marked wrong because of a minor missing detail which, upon information and belief, none of the white students – who also omitted the same detail – were marked off for, and which Plaintiff believed could have meant the difference between a passing and failing grade.

70. WICINSKI deflected this request, by stating that Plaintiff "would still have had a lot of points to make up."

71. At the December 18, 2015 meeting, Plaintiff told WICINSKI that he knew he could write a satisfactory Plan of Care and that she knew he could, too – after all, he had written a satisfactory Plan of Care at the midterm and passed the physical evaluation with ease, so he clearly had mastered the material – he was just unclear on what she wanted to see written in the Plan of Care – but that if she would help him understand where he was falling short (read: provide the feedback he had been requesting) he was sure he could write a satisfactory Plan of Care.

72. WICINSKI feigned support for Plaintiff when she suggested that he request a 3rd re-take (fourth attempt), but repeatedly warned him that such an outcome was highly improbable and that the decision would be up to GRAY, as Program Director.

73. WICINSKI told Plaintiff that she "hoped [he] didn't think she was out to get [him]," and warned him stating, "Trust [her], if [she] was, [she] would be much better at it."

74. WICINSKI insisted that Plaintiff "put it all on [himself]" and "take all of the blame," (as opposed to blaming her skewed/subjective grading, or her failure to provide feedback in compliance with the approved revised remediation plan and APRC letter) in order to increase his chances of being afforded a 3rd re-take (fourth attempt).

JOE L. PRINCE, II v. UNIVERSITY OF ST. AUGSTINE FOR HEALTH SCIENCES, et al
US District Court for the Middle District of Florida, Case No.:
Page 14 of 36

75. Plaintiff asked WICINSKI if he should send her an email confirming what they discussed in the meeting and WICINSKI replied, "Huh? Oh, no. Why would you do that?" When Plaintiff replied that he "just wanted to have something referring to what was discussed," Plaintiff said, "No, don't do that. Let's not worry about that."

76. Immediately following his meeting with WICINSKI on December 18, 2015, Plaintiff met with GRAY. Plaintiff followed WICINSKI's "advice" and placed all blame on himself and did not speak of his grievances against WICINSKI.

77. GRAY agreed to allow Plaintiff a 3rd re-take (fourth attempt) because of his strong academic history in the DPT Program as well as his work ethic, integrity, professionalism, and demonstrated peer leadership as class representative, as well as the fact that Plaintiff had passed the physical evaluation component of the final exam on the first attempt, and scored 81% on the written component at the midterm.

78. These facts, when taken together, make the fact that Plaintiff kept failing the written portion of the final exam, very peculiar, and it seemed that GRAY agreed.

79. WICINSKI never expected GRAY to allow Plaintiff a 3rd re-take (fourth attempt).

80. Despite Plaintiff's willingness to write the 3rd re-take "on the spot," it was scheduled for December 22, 2015.

81. On December 22, 2015, Plaintiff sat for his 3rd re-take and a significant portion of the exam was a similar impairment as that which Plaintiff sought help on in the December 13, 2015 POC email, but never received despite his repeated requests for feedback from WICINSKI.

82. Plaintiff missed that portion of the exam as well as another portion of the exam, and as a result, failed the exam once again.

JOE L. PRINCE, II v. UNIVERSITY OF ST. AUGSTINE FOR HEALTH SCIENCES, et al
US District Court for the Middle District of Florida, Case No.:
Page 15 of 36

83. Having not passed both components of the final exam, Plaintiff received an "F" for the course and was immediately dismissed from the Flex DPT Program.

84. The Student Handbook and Catalog both authorize student grade appeals and dismissal appeals. *See*, Student Handbook, at 73 and Catalog, at 59,60.

85. The "Academic Evaluation and Right of Appeal" section of the Student Handbook, permits a student who has been dismissed to formally appeal his/her *dismissal* by submitting an appeal, in writing, to the Registrar that addresses the student's rationale behind the appeal and why (s)he believes the appeal is warranted. Id. The student's written appeal must also identify future circumstances that will permit the student to rectify previous poor academic performance. Id. Following a hearing, at which the personal appearance of the student is required, a written decision will be given by the Academic Advisory Committee (a/k/a "Dismissal Committee"). Id. If the appellate process reverses the dismissal from the University, the student will be placed on a re-admittance contract and be required to remediate to meet all course requirements before entering a clinical education experience. Id. at 74.

86. On December 22, 2015, Plaintiff filed a timely and sufficient formal appeal of his dismissal from the Flex DPT program,[15] requesting to be heard on the matter.

87. On December 23, 2015, Plaintiff was notified that a hearing on his dismissal appeal had been scheduled before the Academic Appeals Committee, (a/k/a Dismissal Committee) on January 5, 2015 at 9:55 AM.[16]

---

[15] *See*, COMPOSITE EXHIBIT N: Plaintiff's December 22, 2015 dismissal appeal to
[16] See, COMPOSITE EXHIBIT N: Registrar's December 23, 2015 email to Plaintiff scheduling Dismissal Committee hearing.

JOE L. PRINCE, II v. UNIVERSITY OF ST. AUGSTINE FOR HEALTH SCIENCES, et al
US District Court for the Middle District of Florida, Case No.:
Page 16 of 36

88. The Academic Evaluation and Right of Appeal section of the <u>Student Handbook</u> and Catalog permits a student to appeal a grade, in writing, to the Program Director whose obligation is to research the issue and render a decision. <u>Id</u>. at 73.  If the Program Director's response is not satisfactory to the student, (s)he can appeal the issue to the President, in writing, who must <u>hear</u> the issue and either render a verdict on the issue or redirect the issue to the Appeals Committee. <u>Id.</u>

89. In a letter dated December 30, 2015, Plaintiff formally appealed his grade to GRAY.[17]

90. In his December 30, 2015 letter, Plaintiff challenged a number of factors he believes may have unfairly and negatively influenced WICINSKI's grading, including her failure to provide feedback, asked GRAY for reliability grading of each of his re-takes, and to investigate his concerns.

91. On January 4, 2016, having received no response from GRAY to his December 30, 2015 grade appeal letter, Plaintiff emailed GRAY and requested a quick meeting the following day to discuss his appeal.[18]  Plaintiff was already planning to be on campus for his Dismissal hearing before the Academic Appeals Committee.

92. GRAY declined to meet with Plaintiff, citing "all day" faculty meetings, and stated that Plaintiff's 4th attempt (third re-take) had been forwarded to another faculty member to review and grade.[19]

93. On or about January 4, 2016, while preparing for the Academic Appeals Committee hearing, Plaintiff logged-on to his UNIVERSITY email account to print his

---

[17] *See,* COMPOSITE EXHIBIT O: Plaintiff's December 30, 2015 grade appeal letter to GRAY with enclosures.
[18] *See* EXHIBIT P: Plaintiff's January 4, 2016 email requesting meeting with GRAY.
[19] *See* EXHIBIT P: GRAY's January 4, 2016 email reply to Plaintiff.

JOE L. PRINCE, II v. UNIVERSITY OF ST. AUGSTINE FOR HEALTH SCIENCES, et al
US District Court for the Middle District of Florida, Case No.:
Page 17 of 36

December 13, 2015 POC email to WICINSKI, but Plaintiff was unable to locate it in his "sent mail" folder.

94. While he found it peculiar that he was unable to find it, he recalled that on December 17, 2015, he forwarded the email and attachment to himself at another email account and was able to locate and print the email from another email account.

95. On January 5, 2016, Plaintiff successfully argued for re-admission.

96. However, his re-admission was conditioned upon his willingness to sign to a Re-Admission Contract, the terms of which included Plaintiff's agreement to leave UNIVERSITY immediately in the event of a future dismissal, forfeit his right(s) of due process guaranteed by the University Student Handbook to challenge any future dismissal, as well as forfeit his then-existing and future rights of suit or claim(s) against the University.[20]

97. The terms of that Re-Admission Contract were unacceptable to Plaintiff.

98. Although WICINSKI, who served as Chair of the Dismissal Committee, recused herself from the hearing room, she was present and actually escorted Plaintiff from the waiting room to the hearing room and reminded him as they walked that "[she] wears many hats," implying that she had multilevel power and that she still exerted influence over the proceedings.

99. Plaintiff began to reflect and consider how these events progressed and his suspicion that something more than mere academic struggle was afoot began to grow.

100.   Because Plaintiff knew that a successful grade appeal would make moot the matter of his dismissal, he elected to focus his efforts on his grade appeal.

---

[20] *See*, EXHIBIT Q: GRAY's December 5, 2015 dismissal appeal decision letter and original proposed Re-Admission Contract.

JOE L. PRINCE, II v. UNIVERSITY OF ST. AUGSTINE FOR HEALTH SCIENCES, et al
US District Court for the Middle District of Florida, Case No.:
Page 18 of 36

101.   At this juncture, Plaintiff was still technically "Dismissed" and was *not* enrolled as a student at UNIVERSITY, and classes were set to begin in two days.

102.   This uncertainty, coupled with Plaintiff's growing suspicion that WICINSKI's motives were sinister, caused Plaintiff to begin experiencing extreme anxiety, the physical manifestations of which included insomnia, acute nosebleeds and headaches.

103.   On or about January 6, 2016, Plaintiff recalled the peculiarly missing December 13, 2015 POC email, and searched again for it in the "sent mail" folder of his UNIVERSITY email account.

104.   Plaintiff was still unable to locate it in his "sent mail" folder or any other folder of his UNIVERSITY email account although emails Plaintiff sent immediately before and immediately after the missing email remained, but the December 13, 2015 POC email to WICINSKI was missing.

105.   Also missing from his "sent mail" folder was Plaintiff's December 17, 2015 email that forwarded a copy of the December 13, 2015 POC email to himself at another email account.

106.   While searching for these emails within the other email folders of his UNIVERSITY email account, Plaintiff made another chilling discovery: the December 18, 2015 draft email that attached Plaintiff's Word document of "talking points" that he prepared in advance of his final meeting with WICINSKI and saved to the "drafts" folder, was no longer in the "drafts" folder of his UNIVERSITY email account.

107.   Plaintiff searched every folder and sub-folder within his UNIVERSITY email account for the **December 13, 2015 sent "POC email,"** the **December 17, 2015**

JOE L. PRINCE, II v. UNIVERSITY OF ST. AUGSTINE FOR HEALTH SCIENCES, et al
US District Court for the Middle District of Florida, Case No.:
Page 19 of 36

**forwarded copy** of the sent "POC email," and the **December 18, 2015 draft** email. <u>Plaintiff was unable to locate any of these three emails anywhere within his UNIVERSITY email account, and ONLY THESE THREE items/emails were missing.</u>

108.  Plaintiff did not delete any of the three emails.

109.  The <u>Student Handbook</u> requires that all students use the UNIVERSITY email account provided to them by requiring all UNIVERSITY departments to only communicate with students using a student's assigned UNIVERSITY email address. <u>Id</u>. at 13.

110.  The <u>Student Handbook</u> includes an Acceptable Use Policy ("AUP") that is binding upon anyone who utilizes University-provided technology, services, or equipment. <u>Id</u>. at 15.

111.  The AUP lists certain "Usage Guidelines" for the proper use of UNIVERSITY's internet networks, which includes "*refrain from other illegal and unethical use*." <u>Id</u>. at 17.

112.  At all times material hereto, WICINSKI was married to REYNOLDS.

113.  REYNOLDS was Director of Information Technology for UNIVERSITY, and because of his position with UNIVERSITY, REYNOLDS would have had unfettered access to all UNIVERSITY email accounts, including Plaintiff's.

114.  Between the dates of December 17, 2015 and January 6, 2016, WICINSKI and/or REYNOLDS accessed (or caused to be accessed) Plaintiff's UNIVERSITY email account, and deleted (or caused to be deleted) from his "sent mail" and "draft mail" boxes, without his knowledge or permission, the **December 13, 2015 POC email,** the

JOE L. PRINCE, II v. UNIVERSITY OF ST. AUGSTINE FOR HEALTH SCIENCES, et al
US District Court for the Middle District of Florida, Case No.:
Page 20 of 36

**December 17, 2015 forwarded copy** of the POC email and the **December 18, 2015 "talking points"** draft email.

115.   On January 7, 2016, classes resumed on campus without resolution of Plaintiff's grade appeal or dismissal appeal, and, as a result, Plaintiff's anxiety, depression, uncertainty about the future, insomnia, and acute nosebleeds *increased* in frequency and severity.

116.   On January 8, 2016, GRAY responded via email to Plaintiff's December 30, 2015 grade appeal by providing the results of a reliability grading review of the most recent re-take ONLY.[21]

117.   GRAY's January 8, 2016 response wholly failed to address the other matters raised by Plaintiff in his December 31, 2015 grade appeal, including without limitation, (1) WICINSKI's failure to comply with the remediation plans, (2) WICINSKI's willful refusal to respond to a specific request for feedback, and (3) a request for reliability grading of all of Plaintiff's re-take attempts in order to rule out subjective standards which could be causing "false" fails.

118.   Nevertheless, GRAY's response indicated that "the grade appeal [had] been addressed and the course grade [was] final.[22]

119.   On January 11, 2016, Plaintiff appealed GRAY's findings to NITSCH and requested that NITSCH's office make a comprehensive inquiry and review each of the concerns and issues raised in his December 30, 2016 grade appeal to GRAY.[23]

---

[21] *See* COMPOSITE EXHIBIT R: January 8, 2016 email chain between GRAY and Plaintiff.
[22] *See* COMPOSITE EXHIBIT R: January 8, 2016 email chain between GRAY and Plaintiff.

JOE L. PRINCE, II v. UNIVERSITY OF ST. AUGSTINE FOR HEALTH SCIENCES, et al
US District Court for the Middle District of Florida, Case No.:
Page 21 of 36

120.   On January 14, 2016, Plaintiff and his counsel met personally with NITSCH at the St. Augustine campus of UNIVERSITY to further discuss Plaintiff's specific concerns at which time they presented NITSCH with a three-ring binder containing documentation supporting Plaintiff's concerns, including the suspicion that Plaintiff's emails had been tampered with by WICINSKI and/or REYNOLDS or at the direction of either of them in order to cover up the fact that WICINSKI purposefully ignored Plaintiff's request for feedback on a particular issue he was struggling with and then wrote the final exam presented to Plaintiff at his third re-take to include the very issue on which Plaintiff requested feedback, in an effort to exploit a known weakness and that this was all the result of racially discriminatory treatment by WICINSKI.

121.   NITSCH never contacted Plaintiff during her investigation and, as a result, based her decision entirely on misinformation, which could have been refuted by Plaintiff.

122.   Also on that date, counsel for Plaintiff hand delivered to NITSCH a Notice to Preserve Electronic Records[24] advising NITSCH and UNIVERSITY of possible litigation against UNIVERSITY for actions taken by its faculty and/or staff members with regard to their access to and use of UNIVERSITY's email system and the need to preserve and retain certain electronic data and all associated metadata.

123.   On February 2, 2016, NITSCH sent Plaintiff a memorandum dated February 1, 2016, responding to his January 11, 2016 grade appeal, in which she claimed that she had received an email log from "an *independent* information technology expert"

---

[23] *See* EXHIBIT S: Plaintiff's January 11, 2016 grade appeal letter to NITSCH, with enclosures.
[24] *See* EXHIBIT T: January 14, 2016 Notice to Preserve Electronic Records.

JOE L. PRINCE, II v. UNIVERSITY OF ST. AUGSTINE FOR HEALTH SCIENCES, et al
US District Court for the Middle District of Florida, Case No.:
Page 22 of 36

(emphasis added) that she contacted to investigate Plaintiff's concerns about possible tampering with his UNIVERSITY email account.[25]

124.   NITSCH's "*independent* information technology expert" was the Information Technology department at Laureate Education, Inc.

125.   Laureate Education, Inc., is a majority owner of UNIVERSITY. Catalog, at inside cover.

126.   NITSCH's claim that her "*independent*" information technology expert was able to confirm that (1) "the email was sent from [Plaintiff] and delivered to WICINSKI" and (2) that "there is no evidence that emails were purged from [WICINSKI's] email" does nothing to dispel concerns that *Plaintiff's* email account was accessed without his permission and/or tampered with.

127.   NITSCH's February 2, 2016 memorandum, like GRAY's January 8, 2016 response, failed to address Plaintiff's specific requests which were made in both his December 30, 2015 letter to GRAY and his January 11, 2016 letter to NITSCH to review and re-grade each and all of his re-takes and to provide a copy of the actual submitted 3rd re-take (4th attempt).

128.   These shortcomings were again addressed in a February 3, 2016 letter[26] to NITSCH, to which she did not substantively respond until February 23, 2016.[27]

---

[25] *See*, EXHIBIT U: NITSCH's February 1, 2016 Memorandum to Plaintiff (sent February 2, 2016).
[26] *See*, EXHIBIT V: February 3, 2016 letter to NITSCH re denial of Plaintiff's grade appeal.
[27] *See*, EXHIBIT W: NITSCH's February 23, 2016 response to February 3, 2016 letter.

JOE L. PRINCE, II v. UNIVERSITY OF ST. AUGUSTINE FOR HEALTH SCIENCES, et al
US District Court for the Middle District of Florida, Case No.:
Page 23 of 36

129.    By that time, the Spring 2016 trimester was more than half complete and, although Plaintiff had begun attending classes and completing assignments, his enrollment status was still uncertain.

130.    On March 2, 2016, Plaintiff's grade appeal was concluded (his "F" having been affirmed by NITSCH and having no further avenue of appeal), and Plaintiff entered into a revised re-admission agreement with UNIVERSITY.  Per the terms of this agreement, Plaintiff is required to maintain a grade point average of 2.5 or better.[28]

131.    Plaintiff was ultimately required to re-take Mock Clinic during the Spring 2016 trimester, and he was not permitted to progress to his internship as planned, which triggered a one-trimester delay in his anticipated graduation date of August 2017.  His new expected graduation date is December 2017.

132.    On March 19, 2016, Plaintiff successfully passed both portions of the mock clinic final examination on the first attempt that trimester, and finished the course with a letter grade of "B."

133.    On April 21, 2016, WICINSKI referred Plaintiff to the Professional Misconduct Committee ("PMC") alleging that he committed an act of "self-plagiarism" when he submitted two written assignments during the Spring 2016 trimester that had previously been submitted by Plaintiff during the Fall 2015 trimester.[29]  There was *no allegation* that the work submitted was the work of someone other than Plaintiff.

134.    According to the Student Handbook, complaints/allegations of professional misconduct where a student may be dismissed or their academic progression affected

---

[28] *See,* EXHIBIT X: Fully executed Re-Admission Agreement dated March 2, 2016.
[29] *See,* EXHIBIT Y: WICINSKI's April 21, 2016 email referring Plaintiff to PMC.

JOE L. PRINCE, II v. UNIVERSITY OF ST. AUGSTINE FOR HEALTH SCIENCES, et al
US District Court for the Middle District of Florida, Case No.:
Page 24 of 36

are referred to the Professional Misconduct Committee, ("PMC") for disciplinary action. Id., at 57.

135.   For each referral, the PMC conducts an informal hearing on the complaint/allegation of professional misconduct whereby the allegations and evidence against a student are presented by the chair of the PMC and then the student has an opportunity to present his/her version of the events, facts and evidence to support his/her position. Id. at 58.

136.   Based on the evidence presented at the hearing, the PMC makes factual findings concerning the allegation(s) of professional misconduct and recommends disposition – disciplinary action where a student is found guilty, and dismissal of the charge where the allegations are unsupported. Id. at 59.

137.   On May 11, 2016, the PMC found no violation of the Academic Integrity Policy and referred the matter back to GRAY with a recommendation to impose "any grade penalty outlined in the [course] syllabus," but held that "no further sanction shall be imposed."[30]

138.   The Course Syllabus for Mock Clinic does not contain any sanctions for "self-plagiarism," it simply refers to the Student Handbook's Academic Integrity Policy for applicable penalties. Id. at 9.

139.   The sanctions proscribed by the Student Handbook are only triggered when the Professional Misconduct Committee has found that a student has committed a violation.[31]

---

[30] See, EXHIBIT Z: GRAY's May 12, 2016 letter to Plaintiff (postmarked May 16, 2016)
[31] Id. at 59.

JOE L. PRINCE, II v. UNIVERSITY OF ST. AUGSTINE FOR HEALTH SCIENCES, et al
US District Court for the Middle District of Florida, Case No.:
Page 25 of 36

140.    Because the PMC found that Plaintiff did <u>not</u> violate any Academic Integrity Policy, **no sanction was authorized.**

141.    While accused students have the right to appeal the decision of the PMC with which they disagree, the <u>Student Handbook</u> does not afford faculty and other reporting parties the same right. <u>Id</u>. at 59, 60.

142.    UNIVERSITY's Academic Integrity policy, which is separate from the Professional Misconduct policy, focuses exclusively on variations of plagiarism. According to the <u>Student Handbook</u>, "academic integrity means that all academic work represents the individual work of the stated author," and requires that "input and assistance from <u>others</u> must always be appropriate and fully acknowledged... any deviation from this policy will be considered Academic Dishonesty (emphasis added). <u>Id</u>. at 9.

143.    The <u>Student Handbook</u> recognizes three distinct levels of Academic Dishonesty, ranging from least severe ("Level One") to most severe ("Level Three") and gives examples of each. <u>Id</u>. at 10.

144.    A "Level One Academic Dishonesty" violation typically occurs as a result of students not familiarizing themselves with writing and course requirements, such as "lazy plagiarism" – forgetting a citation or leaving a reference off a reference list or failing to cite or acknowledge a source in a small or limited part of the paper. <u>Id</u>.

145.    A "Level Two Academic Dishonesty" violation is more serious because they are more intentional in nature. <u>Id</u>. Examples include quoting or directly plagiarizing, to a moderate extent, without acknowledging the source and submitting the same work or

JOE L. PRINCE, II v. UNIVERSITY OF ST. AUGSTINE FOR HEALTH SCIENCES, et al
US District Court for the Middle District of Florida, Case No.:
Page 26 of 36

major portions thereof to satisfy the requirements of more than one (1) course without permission from the instructor. Id.

146.    A "Level Three Academic Dishonesty" violation is the most serious type of offense and includes conduct that is the most intentional: blatant acts of cheating such as copying another's paper or exam, looking at another student's exam, using materials forbidden during an exam, or using any illegal or unethical means of acquiring information during an exam. Id. at 11.

147.    Any violation of the Academic Integrity Policy committed by someone who has previously been caught in an act of academic dishonesty is automatically enhanced to a "Level Three Academic Dishonesty" violation, the consequence of which can include dismissal from the program. Id.

148.    In a bizarre case of double jeopardy, WICINSKI and GRAY ignored the findings of the Professional Misconduct Committee and pursued a different avenue of attack: they re-named the *same conduct* investigated by the Professional Misconduct Committee "Level Two Academic Dishonesty violation"[32] which could be handled by the course faculty (WICINSKI) in consultation with the program director (GRAY),[33] insulated from administrative review.

149.    Despite the fact that the conduct complained of did not fit within the Student Handbook's definition or examples of "Level Two Academic Dishonesty" (and thus would not constitute a violation), WICINSKI and GRAY imposed the following sanction on Plaintiff:

---

[32] *See,* EXHIBIT AA: : GRAY's May 16, 2016 letter to Plaintiff, postmarked May 18, 2016.
[33] *See,* Student Handbook at 7.

JOE L. PRINCE, II v. UNIVERSITY OF ST. AUGSTINE FOR HEALTH SCIENCES, et al
US District Court for the Middle District of Florida, Case No.:
Page 27 of 36

"... a zero grade on each of the assignments that were self-plagiarized and a five percent deduction in the overall course grade..."[34]

150. The sanction imposed was not only unwarranted, <u>it was unauthorized</u>. Even if it had been warranted, the sanction imposed by WICINSKI and GRAY would have been unauthorized because the only sanctions available for conduct constituting a "Level Two Academic Dishonesty" are (1) a zero grade for an assignment **OR** (2) writing a paper on academic ethics, (emphasis added) but not both, and not something else. <u>Student Handbook</u>, at 10.

151. WICINSKI and GRAY intended for this unwarranted and unauthorized sanction to trigger a drop in Plaintiff's final grade from a "B" to a "C." Consider the following: even with two zeros, Plaintiff's grade remained a "B," and it wasn't until the 5% reduction in his overall grade was applied that his letter grade dropped to a "C."

152. WICINSKI and GRAY further intended to set up Plaintiff so that any future allegation (however imaginative and factually baseless it may be) would be automatically escalated to a "Level Three Academic Dishonesty violation" as a "repeat offender," which would automatically trigger dismissal proceedings against Plaintiff.

153. During the Fall 2015 trimester, a student reported to WICINSKI a clear and unequivocal incident of cheating: a white student asked the reporting student for an answer *during* the November 21, 2015 physical evaluation portion of the final exam.

---

[34] See, EXHIBIT AA:  GRAY's May 16, 2016 letter to Plaintiff, postmarked May 18, 2016.

JOE L. PRINCE, II v. UNIVERSITY OF ST. AUGSTINE FOR HEALTH SCIENCES, et al
US District Court for the Middle District of Florida, Case No.:
Page 28 of 36

154.   This report was made verbally to WICINSKI and, at her request, via email[35] to WICINSKI, who told the reporting student that "[she] would show [the reporting party's] email to GRAY because she wasn't sure if [asking for an answer during an exam] was cheating."

155.   Per the <u>Student Handbook</u>, asking another student for an answer during a final exam is a clear and unambiguous Level Three Academic Dishonesty violation, for which referral to the Professional Misconduct Committee for disciplinary action is *mandatory* and for which sanctions may include a failing grade for the course and/or dismissal from the program. <u>Id</u>. at 11.

156.   Per the <u>Course Syllabus</u>, "Any student found cheating on an examination would be referred to the professional misconduct committee," <u>Id</u>. at 9.

157.   Despite the mandatory language of both the Student Handbook and her own Course Syllabus, requiring referral of the matter for disciplinary action, WICINSKI did not refer the white student to the Professional Misconduct Committee and, upon information and belief, *no action was ever taken against that white student*.

158.   As a direct and proximate result of these events, Plaintiff has already been required to travel 142 miles (round trip) on each of 7 additional weekends to attend classes and labs to re-take Mock Clinic during the Spring 2016 trimester, as well as 5 additional campus visits for re-takes, hearings and meetings incident to his grade appeal and dismissal appeal.  He has also incurred related expenses including lodging, food, gas, and lost wages over the same time period.

---

[35] *See*, EXHIBIT AB: November 22, 2015 email to WICINSKI reporting another student for cheating during the November 21, 2015 final exam.

JOE L. PRINCE, II v. UNIVERSITY OF ST. AUGSTINE FOR HEALTH SCIENCES, et al
US District Court for the Middle District of Florida, Case No.:
Page 29 of 36

159. As a direct and proximate result of these events, Plaintiff has suffered severe headaches, nosebleeds, insomnia, depression, humiliation, mental anguish and anxiety. He continues to suffer humiliation and anxiety over these events.

160. As a direct and proximate result of these events, Plaintiff will incur future expenses including without limitation, lost future wages, additional attorneys' fees, tuition costs for the Fall 2017 trimester, lodging, food, and gas for the Fall 2017 trimester.

161. As a direct and proximate result of these events, Plaintiff has been forced to seek legal representation to enforce his civil rights and his contract rights. Plaintiff has retained the undersigned law firm and has agreed to pay a reasonable fee for their services.

**FIRST CAUSE OF ACTION:  Breach of Implied-in-Fact Contract**

162. Plaintiff re-alleges and re-avers each and all of the allegations set forth in paragraphs 1 through 161 above, as if fully set forth herein.

163. WICINSKI breached the contract when she (1) failed to comply with the requirements of the approved remediation plan by failing to provide requested feedback on specific areas of concern; (2) engaged in unethical conduct with respect to the use of UNIVERSITY's network, computers and/or email system when she tampered with, or caused to be tampered with, Plaintiff's UNIVERSITY email account and deleted or caused to be deleted certain emails, including the December 13, 2015 POC email, December 17, 2015 email forwarding the POC email and the December 18, 2015 "talking points" draft email, from Plaintiff's UNIVERSITY email account; (3) circumvented the Academic Integrity Policy and the Professional

JOE L. PRINCE, II v. UNIVERSITY OF ST. AUGSTINE FOR HEALTH SCIENCES, et al
US District Court for the Middle District of Florida, Case No.:
Page 30 of 36

Misconduct Committee after it had fully investigated and ruled on her referral by imposing sanctions against Plaintiff that were both unfounded and unauthorized; (4) ignored the mandate of the Student Handbook which <u>requires</u> the referral of blatant acts of intentional academic dishonesty, or "cheating," to the Professional Misconduct Committee for disciplinary action when she elected to not report a white student for a clear and unambiguous attempt to cheat during a final exam, and (5) was motivated to do each and all of the foregoing by the fact that Plaintiff is black, in violation the Non-Discrimination Policy.

### SECOND CAUSE OF ACTION: Breach of Implied-in-Fact Contract

164.    Plaintiff re-alleges and re-avers each and all of the allegations set forth in paragraphs 1 through 161 above, as if fully set forth herein.

165.    GRAY breached the contract when she: (1) failed to fairly and adequately investigate Plaintiff's student complaint and appeal of his failing grade, as well as his resulting dismissal from the program, and (2) circumvented the Academic Integrity Policy and the Professional Misconduct Committee after it had fully investigated and ruled on WICINSKI's referral, (3) denied Plaintiff his right of due process guaranteed by the Implied-in-Fact Contract, and (4) ignored the mandate of the Student Handbook which <u>requires</u> the referral of blatant acts of intentional academic dishonesty, or "cheating," to the Professional Misconduct Committee for disciplinary action when she elected to not report a white student for a clear and unambiguous attempt to cheat during a final exam, and (5) was motivated to do each and all of the foregoing by the fact that Plaintiff is black, in violation of the Non-Discrimination Policy.

JOE L. PRINCE, II v. UNIVERSITY OF ST. AUGSTINE FOR HEALTH SCIENCES, et al
US District Court for the Middle District of Florida, Case No.:
Page 31 of 36

**THIRD CAUSE OF ACTION: Breach of Implied-in-Fact Contract**

166.  Plaintiff re-alleges and re-avers each and all of the allegations set forth in paragraphs 1 through 161 above, as if fully set forth herein.

167.  NITSCH breached the contract when she failed to fairly and adequately investigate Plaintiff's student complaint and appeal of his failing grade as well as his resulting dismissal from the program by (1) failing to contact Plaintiff; (2) failing to ask questions of the "independent" information technology expert likely to lead to the discovery of the truth about what happened to Plaintiff's missing emails; and/or (3) willfully ignoring or refusing to pursue Plaintiff's complaints that he was treated differently than his white classmates, (4) denied Plaintiff his right of due process guaranteed by the Implied-in-Fact Contract, and (5) was motivated to do each and all of the foregoing by the fact that Plaintiff is black, in violation of the Non-Discrimination Policy.

**FOURTH CAUSE OF ACTION: Breach of Implied-in-Fact Contract**

168.  Plaintiff re-alleges and re-avers each and all of the allegations set forth in paragraphs 1 through 18, 50 through 54, 64, 65, and 103 through 114 above, as if fully set forth herein.

169.  REYNOLDS breached the contract when he engaged in unethical conduct with respect to the use of UNIVERSITY's network, computers and/or email system when he directly or indirectly accessed, or caused to be accessed, Plaintiff's UNIVERSITY email account and deleted, or caused to be deleted, Plaintiff's key emails and other written materials, including December 13, 2015 POC email, December 17, 2015

JOE L. PRINCE, II v. UNIVERSITY OF ST. AUGSTINE FOR HEALTH SCIENCES, et al
US District Court for the Middle District of Florida, Case No.:
Page 32 of 36

email forwarding the POC email and the December 18, 2015 "talking points" draft email, from Plaintiff's UNIVERSITY email account.

### FIFTH CAUSE OF ACTION: Breach of Implied-in-Fact Contract

170.   Plaintiff re-alleges and re-avers each and all of the allegations set forth in paragraphs 1 through 161 above, as if fully set forth herein.

171.   Defendants WICINSKI, GRAY, and NITSCH breached the contract by discriminating against Plaintiff on the basis of his race, in the administration of UNIVERSITY's educational policies (right of due process, remediation, grade appeal, dismissal appeal), and other school administered programs (Professional Misconduct Referral).

### SIXTH CAUSE OF ACTION:  Violation of Civil Rights (42 U.S.C. §1981)

172.   Plaintiff re-alleges and re-avers each and all of the allegations set forth in paragraphs 1 through 161 above, as if fully set forth herein.

173.   Defendant, WICINSKI, willfully, repeatedly and maliciously singled-out Plaintiff, the only black male student in PHT5236C001: Therapeutic Exercise II, during the Summer 2015 trimester and PHT 5133C Musculoskeletal II: Mock Clinic during the Fall 2015 trimester, and engaged in discriminatory conduct toward him in violation of 42 U.S.C. §1981.   Specifically, WICINSKI purposefully attempted to frustrate and impair Plaintiff' ability to successfully complete the Flex DPT Program by making Plaintiff the target of specific efforts that began during the Summer 2015 trimester and continued into the Fall 2015 and Spring 2016 trimesters.  WICINSKI's efforts included, without limitation, the following actions: making veiled threats,

JOE L. PRINCE, II v. UNIVERSITY OF ST. AUGSTINE FOR HEALTH SCIENCES, et al
US District Court for the Middle District of Florida, Case No.:
Page 33 of 36

purposeful non-response to requests for feedback, and tampering with evidence that would assist him in proof of these claims.

174. During the Spring 2016 trimester, following Plaintiff's successful dismissal appeal, WICINSKI further pursued Plaintiff by engaging in retaliatory conduct when she referred Plaintiff to the Professional Misconduct Committee and alleged that he had committed an act of "self-plagiarism," in an attempt to have Plaintiff dismissed from the Flex DPT Program.

175. WICINSKI's referral of Plaintiff to the Professional Misconduct Committee is yet another example of her targeted efforts toward Plaintiff to thwart his forward progression in the program, to tarnish his professional reputation, and/or to wear him down to the point that he either gives up or gives in and leaves the program voluntarily.

176. That Plaintiff continues to survive in the program despite WICINSKI's relentless attacks frustrates WICINSKI immensely.

177. Following the Professional Misconduct Committee's finding of "no violation," WICINSKI and GRAY circumvented the Academic Integrity Policy and the Professional Misconduct Committee when they renamed the alleged conduct a "Level Two Dishonesty Violation," "investigated" it privately, and imposed an unwarranted and unauthorized sanction against Plaintiff.

178. Defendants WICINSKI and GRAY ignored the mandate of the Student Handbook which requires the referral of blatant acts of intentional academic dishonesty, or "cheating," to the Professional Misconduct Committee for disciplinary action when

JOE L. PRINCE, II v. UNIVERSITY OF ST. AUGUSTINE FOR HEALTH SCIENCES, et al
US District Court for the Middle District of Florida, Case No.:
Page 34 of 36

they each and both elected to not report a white student for a clear and unambiguous attempt to cheat during a final exam.

179.    Defendants, UNIVERSITY, GRAY, and NITSCH were on notice of Plaintiff's complaints and their willful failure and/or refusal to intervene, investigate, and/or correct the issues makes them equally responsible for WICINSKI's racially discriminatory actions and the results that followed.

180.    UNIVERSITY, GRAY and NITSCH's willful failure and/or refusal to make fair and diligent inquiry into WICINSKI's racially motivated discrimination and to take remedial action constitutes race discrimination in violation of 42 U.S.C. §1981 because it involves the enforcement of an implied in fact contract to which all were parties.

## PRAYER FOR RELIEF

181.    Plaintiff demands a jury trial on his claims.  He will ask the following of the jury and of this Court:

    a.  Substantial compensatory and exemplary damages in an amount to be determined by the jury but not less than $300,000.00.

    b.  Punitive damages not less than $2.7 million.

    c.  Such other relief as is just, equitable, and applicable under statutory and common law, including costs and attorney fees;

    d.  Any other and further relief that the court deems just.

JOE L. PRINCE, II v. UNIVERSITY OF ST. AUGSTINE FOR HEALTH SCIENCES, et al
US District Court for the Middle District of Florida, Case No.:
Page 35 of 36

Dated: _August 9, 2016_

LOCKHART TEAL, LLC

By: _____

Erin N. Lockhart, Esq., FBN 010559
Trial Counsel
LOCKHART TEAL, LLC
333 E. New York Ave., Suite A
DeLand, FL 32724
Phone:  (386) 738-3400
Fax:  (386) 738-4300
Email:  lockhart@keltonandteal.com

JOE L. PRINCE, II v. UNIVERSITY OF ST. AUGSTINE FOR HEALTH SCIENCES, et al
US District Court for the Middle District of Florida, Case No.:
Page 36 of 36